IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAMAL NARANG, | |
| Petitioner, | No. 06-cv-1062 (JBS) |
| v. | OPINION |
| CHARLES E. SAMUELS, JR., | |
| Respondent. | |

APPEARANCES:

Paul S. Brenner, Esquire
401 Broadway
New York, New York  10013
     Attorney for Petitioner

Christopher J. Christie,
UNITED STATES ATTORNEY
     By:  Irene E. Dowdy
          Assistant United States Attorney
United States Attorney's Office
402 East State Street
Suite 430
Trenton, New Jersey  08608

JEROME B. SIMANDLE, District Judge:

Petitioner, Kamal Narang, a federal inmate presently confined at FCI Fort Dix, New Jersey, has petitioned this Court, through counsel, Paul S. Brenner, Esq., for habeas corpus relief under 28 U.S.C. § 2241, mandamus relief pursuant to 28 U.S.C. § 1361, and a temporary restraining order and preliminary injunction pursuant to Rule 65(b), Fed. R. Civ. P., in a pleading entitled "Petition for Writ of Habeas Corpus, Mandamus and Injunctive Relief."  Petitioner seeks to challenge the Bureau of

Prisons' decision that he would receive approximately 45 days placement in a Community Corrections Center ("CCC"), and he seeks an Order of this Court that the BOP afford him a good faith, redetermination of his placement into a CCC by awarding the full six months permitted by 18 U.S.C. §§ 3621(e) and 3624(c).

Pursuant to this Court's Order entered August 2, 2006, the Respondent Charles E. Samuels, Jr., Warden at FCI Ft. Dix, filed an Answer to the Petition on August 15, 2006, accompanied by the Declarations of Nicole M. Ahmed and Camille Rodriguez and exhibits thereto.  Meanwhile, on August 4, 2006, Petitioner's counsel, Mr. Brenner, filed a letter application with the Court, seeking immediate entry of a writ of habeas corpus, in light of Mr. Narang's approaching CCC placement date of September 19, 2006.  Respondent argues that the petition and motions should be denied because the BOP has considered Mr. Narang's pre-release placement in good faith in light of the Third Circuit's decision in Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005)("Woodall").

Petitioner replied on August 16, 2006, arguing that the BOP has illegally refused to consider post-sentencing factors, especially the hardship that a delay in CCC placement causes for Petitioner's family who are experiencing severe difficulties due to his incarceration.  Petitioner argues that consideration of pertinent policy statements of the Sentencing Commission is

2

mandated by Section 3621(b)(5), and that among those policy statements is recognition that extraordinary family ties may warrant a shortening of confinement under U.S.S.G. § 5K1.1.

For the following reasons, the Court will deny the motions for injunctive and mandamus relief, and will deny the Petition upon its merits, because the record demonstrates that the BOP gave reasonable consideration to all pre-release placement factors and reached a decision that is within its discretion.

## I. PROCEDURAL HISTORY

According to the record herein, Kamal Narang was sentenced on September 23, 2005, in the Eastern District of New York, to a term of one year and one day of imprisonment, to be followed by three years of supervised release, on conviction for wire fraud and transportation of stolen goods, in violation of 18 U.S.C. §§ 1343 & 2314, with no recommendation appearing in the judgment as to the type of correctional facility for service of any portion of imprisonment. On January 17, 2006, he was committed to the custody of the BOP by self-reporting to FCI Ft. Dix. If he receives all good conduct credit available under Section 3624(b), his projected release date is November 29, 2006, see Ahmed Declaration, Paragraph 3, Ex. 1a and Ex. 1c.

On February 10, 2006, Petitioner's Unit Team at FCI Ft. Dix conducted a review of his file, to include a recommendation for

RRC placement (formerly CCC placement) at the end of his term of imprisonment to assist his reentry into community life.  The Respondent alleges that the Unit Team, acting two months after the Third Circuit's decision in Woodall, supra, considered RRC placement in good faith without regard to an "10% of sentence" limitation.  Rodriguez Declaration, Paragraphs 7, 8. Ms. Rodriguez's duties as a Case Manager include participating with the Unit Manager in reviewing the relevant records for placement reviews and recommending the dates for referral of the inmate for RRC placement. Id. at 2-4.  The referral package is reviewed ultimately by the Warden, and the Warden's determination goes to the Community Corrections Manager who arranges placement of the inmate with the appropriate and available RRC.  Id. at 5.

     In Mr. Narang's case, according to Case Manager Rodriguez, the Unit Team determined that Petitioner should be granted 45-75 days in the RRC, and the placement window of September 19-October 17, 2006, was chosen. Id. at 8.  The Unit Team considered that Petitioner has strong family support, a residence and adequate financial resources, a relatively short sentence of 12 months and one day, and appropriate release funds to ensure a smooth transition into the community. Id. at 10.  On July 3, 2006, Petitioner's BP-210 form was signed by the Warden and Mr. Narang was given an RRC placement date of September 19, 2006.  Id. at 10.

The Petitioner, although dissatisfied with both the initial Unit Team designation of 45-75 days' placement, and with the Warden's final selection of September 22, 2006 as the placement date, has not filed any administrative appeal, let alone has he exhausted his administrative remedies, as admitted in his Petition itself.  Petition, at Paragraph 12 ("... it is undisputed that petitioner has not pursued any remedies prior to the filing of the instant pleadings").  He asserts that exhaustion should be excused because there was not enough time to do so in February 2006, in light of the fact that if he were eligible for a six month placement, it could commence on or about May 29, 2006. Id.  Petitioner originally argued that the BOP's determination violated the duty to consider all five factors enumerated in Section 3621(b), Petition at Paragraph 19, and that the BOP has abused its discretion in failing to place Petitioner at an earlier date into the RRC, id. at Paragraph 20. Subsequently, in a letter filed April 11, 2006 (Docket Item 2), Petitioner's counsel posited for the first time a new ground for the BOP's alleged abuse of discretion, arising from Petitioner's claim that two of his children have been under a doctor's primary care "primarily based on the absence of their father," and counsel attached medical records as documentation of that assertion.  (Brenner Letter of April 10, 2006 at 1 and Ex. A thereto.)  The records reveal that petitioner's son Steve (age

5

4) is receiving speech therapy due to oral motor and swallowing problems accompanied by reflux, and that Natasha (age 8) received an X-ray of her left hand and has suffered several attacks of parotitis, which is inflammation of the salivary gland.  (Id. at Ex. A.)  Several records from a clinic in New Delhi, India, are included referring to treatments rendered to a Mr. P. L. Narang (age 69) for partial rectal blockade and for a Sheela Narang (age 61) for hypertension and coronary artery disease.

    Also in his April 10th letter to the Court, Petitioner's counsel argues that the BOP's placement determination is made in bad faith considering that Mr. Narang is a victim of an unprovoked assault at the Prison Camp, attaching Ex. B (which is a BOP administrative detention order indicating that on February 21, 2006 Mr. Narang was placed in protective detention while a "keep-away" order was entered as to the assailant, Inmate Caldwell).  Mr. Narang himself also submitted some of the same medical records and the administrative detention order to this Court in his letter of June 8, 2006, which was not also mailed to the Respondent or to the United States Attorney's Office defending this case.  So far as the record reflects, neither Petitioner nor his counsel presented these grounds (family health and administrative detention) to the BOP as a basis for changing the initial RRC assignment determination that is under attack here.

6

## II. DISCUSSION

### A. Exhaustion of Remedies

The Petition, in Paragraphs 10-13, admits that Petitioner has not exhausted his available administrative remedies, but asks that exhaustion be excused on grounds of futility and based upon the short amount of time remaining on his sentence. Id, at Paragraphs 12-13. The Respondent's Answer denies that exhaustion of administrative remedies would be futile, Answer ¶ 13. The BOP's record system also reflects that Petitioner has not invoked the Administrative Remedy Procedure. Ahmed Decl. ¶ 5 and Ex. 1 b [SENTRY Administrative Remedy Generalized Retrieval printout.] The Respondent further notes that Narang has not pursued the available administrative remedy at any time after the Unit Team's recommendation of a 45 to 75 day placement period on February 10, 2006, even though that determination was made 9 1/2 months before his projected release date and 3 1/2 months before even his "six month" date. Respondent's Answer at 14 n. 3. Respondent argues that Petitioner's claim of time pressure as a ground for futility is not meritorious, and further that Petitioner's challenge is not addressed to the BOP's RRC placement policy, but rather to the application of that policy to him, such that it was not pre-ordained that no administrative appeal could succeed. Id.

Section 2241 is the appropriate vehicle for addressing a challenge to the BOP's determination of pre-release transfer to a

Community Corrections Center (now an "RRC").  Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 242-44 (ed Cir. 2005), because such a decision bears upon the execution of the sentence similar to administration of parole, computation of sentence by prison officials, prison disciplinary actions and type of detention.  Id., citing Jiminian v. Nash, 245 F.3d 144, 147 (2d Cir. 2001).

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[1]  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981);

---

[1] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.

Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Similarly, exhaustion of administrative remedies is not required where the issue presented involves only statutory construction, because there is no need for an administrative agency to develop a factual record or to apply its expertise with respect to the circumstances presented.  See Bradshaw v. Carlson,

9

682 F.2d 1050, 1052 (3d Cir. 1981) (citing U.S. ex re. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653 (1974)).

Where exhaustion is required, a prisoner's procedural default in pursuing administrative remedies bars judicial review of a subsequent habeas corpus petition, absent the prisoner's demonstration of cause and prejudice for the default. Moscato, 98 F.3d at 760-62, citing Davis v. United States, 411 U.S. 233 (1973).

In the present matter, Petitioner's explanation for defaulting upon his pursuit of required administrative remedies is unavailing. Narang's challenge to the BOP's determination of February 10th could have been timely addressed upon administrative appeal in the 3 1/2 months that remained even before the "six-month" date. Even the "six month" date, which is the earliest possible date for transfer, is not necessarily the benchmark for determining futility of exhaustion, since the likelihood of the need for a transition of six months in an RRC for a prisoner serving only a 12-month sentence is highly remote. As Woodall stated, "that the BOP may assign a prisoner to CCC does not mean that it must." Woodall, 432 F.3d at 251. Since the BOP is vested with considerable discretion in determining the place of imprisonment under 18 U.S.C. § 3621(b), and the language of 18 U.S.C. § 3624(c) likewise vests the BOP with

10

discretion in determining whether, and how long, to designate an individual inmate to pre-release transition programming, as recognized in Woodall, it only makes sense that the inmate, if dissatisfied with the pre-release transition determination, attempt to persuade the BOP to exercise its discretion differently through administrative review before resorting to federal court under Section 2241.

This is especially true where the Petitioner seeks to present new information or emerging circumstances that could alter the BOP's pre-release transition calculus.  In this case, the Petitioner chose to present to this Court, and not to the BOP, medical records of family members bearing upon his claim of family hardship which he believed warranted an earlier pre-release transfer.  When one examines the purposes of the exhaustion doctrine, as in Goldberg v. Beeler and Moscato v. Federal Bureau of Prisons, supra, those goals could have been served in this case if Mr. Narang and his counsel had presented the information immediately in February and March to the BOP.  In that event, the BOP could "develop a factual record and apply its expertise facilitat[ing] judicial review," and it would have been enabled to "grant the relief requested conserv[ing] judicial resources," and the BOP would have been provided "the opportunity to correct [its] own errors foster[ing] administrative autonomy." Goldberg v. Beeler, 82 F. Supp. 2d at 309.  Bypassing the BOP

11

administrative process in ordinary circumstances presented here means that this Court is asked to act in place of the Unit Team, Warden, Regional Director, and General Counsel of the BOP, without the benefit of an adequate administrative factual record developed with the agency's expertise.  Worse, such bypass can elevate a pre-release transfer plan to the status of an emergent federal case when such a matter could have been addressed and resolved quickly at the institutional level, if meritorious.

For these reasons, Petitioner's failure to exhaust his available administrative remedies bars judicial review of his habeas petition, which must be dismissed.

**B.  Review of Placement for Abuse of Discretion**

If exhaustion of administrative review were deemed to be futile, and if the Unit Team's recommendation and the subsequent calculation of an RRC placement date of September 19, 2006 were deemed a final determination of the BOP subject to judicial review, this Court would apply the familiar precepts of the Administrative Procedure Act to such review.

The Administrative Procedure Act requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).[2]  A reviewing court must find that the actual choice made by the agency was neither arbitrary nor capricious.  <u>C.K. v. N.J. Dep't of Health & Human Services</u>, 92 F.3d 171, 182  (3d Cir. 1996); <u>see also</u> <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 414 (1971), ("agency action must be set aside if the action was `arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' ..."), <u>overruled on other grounds</u>, <u>Califano v. Sanders</u>, 430 U.S. 99 (1977) (quoting 5 U.S.C. § 706(2)(A)).  "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins.</u>, 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted); <u>accord</u> <u>Bowman Transp., Inc. v. Arkansas-Best Freight System</u>, 419 U.S. 281, 285 (1974).

"The Court is not empowered to substitute its judgment for that of the agency."  <u>Overton Park</u>, 401 U.S. at 416.  Reversal of agency action is required "[i]f the record before the agency does not support the agency action, if the agency has not considered

---

[2] See <u>Lopez v. Davis</u>, 531 U.S. 230, 240 (2001) (BOP may categorically exclude inmates from eligibility for early release, subject to its obligation to interpret statute in a manner that is not arbitrary and capricious, <u>see</u> 5 U.S.C. § 706(2)(A)).

13

all relevant factors, or if [the court] simply cannot evaluate the challenged agency action on the basis of the record before [it])." C.K., 92 F.3d at 184  (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

When the BOP has determined a pre-release transfer plan for placement into an RRC, it must do so in good faith, without regard to any 10% of sentence limitation, assessing the inmate's individual transitive needs, applying statutory factors the BOP must fully consider under 18 U.S.C. § 3621(b).  Woodall, 432 F.3d at 244.  Section 3621(b), entitled "Place of Imprisonment," states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--

14

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

In the present case, the institution's determination was almost two months after Woodall was published on December 15, 2005, and the Unit Team followed Woodall[3] in basing its review on the statutory factors without regard to Petitioner's 10-percent date, determining he should be granted 45 to 75 days in an RRC. Rodriguez Decl. ¶¶ 7 & 8.  The dates for transfer were in the range from September 19, 2006 to October 17, 2006.  (Id. at Ex. 2A.)

---

[3] Petitioner's Brief critiques the earlier pre-release programs of 2002 and 2005 which were overturned by Woodall and not applied here by the BOP.

The Unit Team reviewed the relevant documentation including Narang's presentence investigation and report and a Health Services recommendation and found that Narang "has strong family support, a residence and adequate financial resources.  He also had a relatively short sentence of 12 months and one day.  His inmate account also indicates he has appropriate release funds to ensure a smooth transition into the community."  Rodriguez Decl. ¶ 9.  Ultimately, it was possible to arrange his placement to occur upon the earliest date -- September 19, 2006 -- to a Residential Reentry Center near his home in Brooklyn, New York.

Significantly, Petitioner does not contest any of these individual factual considerations.  He instead alleges that the BOP should transfer him at an earlier date to enable him to assist his struggling family, as discussed above.  First, as already noted, there is no indication in the record that Petitioner has actually presented these reasons for review by the BOP.  Secondly, it is not apparent that his family's hardships are severe or unusual enough to warrant consideration in transition planning, where (a) the sentencing court made no determination of unusual family hardships and (b) the family medical conditions he mentions appear to be chronic and not life-threatening.  Since the U.S. Sentencing Guidelines' policy statements are to be considered under Section 3621(b)(5), supra, it is noteworthy that variances for family medical hardships

16

under U.S.S.G. § 5H1.6 are generally granted when the type of medical care required by a family member is so unique or burdensome that another responsible adult could not provide the necessary supervision and care in defendant's absence, <u>United States v. Sweeting</u>, 213 F.3d 95, 105 (3d Cir. 2000) [vacating grant of departure]; of <u>United States v. Dominguez</u>, 296 F.3d 192, 195-200 (3d Cir. 2002) [remanding and recognizing discretion to depart under § 5H1.6 where elderly and infirm parents of defendant were physically and financially dependent upon her and no other person could help and no funds were available to employ outside assistance].  Here, the Court has been provided with almost no information about Petitioner's family other than, as noted above, his son receives speech therapy and has swallowing problems, his daughter had a hand x-ray and several attacks of an inflamed salivary gland, and parents in India are receiving treatments for an intestinal disorder and for coronary artery disease.  These facts would be insufficient to warrant an earlier placement on hardship grounds.

    Moreover, the transition determination of the BOP was a manifestly reasonable application of the Section 3621(b) factors to these circumstances.  The designated facility appears to have the appropriate resources, as no special transition needs (such as drug treatment or job training) have been identified.  His underlying non-violent offense has been taken into account

17

through consideration of his presence investigation and report, as have his history and characteristics as reflected by his strong family ties and financial capabilities for re-entry into the community.  There were no special recommendations of the sentencing court to consider (since the final Judgment is silent as to any recommendation of placement or special conditions of supervised release), nor did the Court impose a fine or restitution.  The determination of 45 to 75 days' pre-release transfer upon this sentence of 12 months of confinement is not an abuse of discretion nor is it contrary to law.  Accordingly, even if reviewed upon the merits, the BOP's determination was reached after consideration of the relevant factors and is not an abuse of discretion or contrary to law under Section 3621(b) and Woodall.

### III.  CONCLUSION

   For the reasons stated herein, the petition for habeas corpus is dismissed for failure to exhaust available administrative remedies.  In the alternative, if failure of exhaustion is excused, the petition is denied upon the merits as the Bureau of Prisons did not abuse its discretion or act

contrary to law in determining Petitioner's pre-release transfer plan.[4]  The accompanying Order is entered.

**September 12, 2006**                    **s/ Jerome B. Simandle**
Date                                                Jerome B. Simandle
                                              United States District Judge

---

[4] In light of this dispositive adjudication, Petitioner's applications for a preliminary injunction under Rule 65(b), Fed. R. Civ. P., and for mandamus relief under 28 U.S.C. § 1361 are denied.